IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv668

| | |
|---|---|
| RASHID A. BUTTAR, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>MARK ALLEN NOVEMBER, )<br>)<br>Defendant. )<br>_____ ) | ORDER |

**THIS MATTER** is before the court on defendant's Motion to Set Aside Entry of Default (#5) and defendant's Motion to Dismiss or Transfer Venue (#6). Plaintiff has filed his response to defendant's motions and defendant has not filed a reply.

While the docket indicates that defendant is proceeding *pro se*, it appears from his motion as well as defendant's brief that he is being assisted by an attorney. While such practice does not violate any local rules, counsel who is investing valuable time should make an appearance and engage their opponent as well as the court.

## FINDINGS AND CONCLUSIONS

**I.     Defendant's Motion to Set Aside Entry of Default**

In determining whether to set aside entry of default, the Court of Appeals for the Fourth Circuit, has clearly stated, as follows:

> `an extensive line of decisions' has held that Federal Rule of Civil Procedure 55(c) must be `liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'

<u>Lolatchy v. Arthur Murray, Inc.</u>, 816 F.2d 951, 954 (4th Cir. 1987) (citation omitted). Where a party moves to set aside entry of default, "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary

-1-

Case 3:10-cv-00668-MOC-DSC   Document 12   Filed 06/09/11   Page 1 of 15

termination of proceedings." United States v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982). Whether a default should be set aside is in the sound discretion of the district court, Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987), and "an abuse of discretion in *refusing* to set aside a default judgment `need not be glaring to justify reversal.'" Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) (quoting Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980; emphasis added); accord Lolatchy v. Arthur Murray, Inc., supra.

Since Tolson v. Hodge, 411 F.2d 123 (4th Cir. 1969), the Court of Appeals for the Fourth Circuit has held steadfast to its belief that the civil rules should be construed liberally to set aside a default. All that need be shown to set aside entry of default under Rule 55(c) is good cause. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir. 1988). Further, the Court of Appeals for the Fourth Circuit has warned that it has taken an increasingly liberal view of setting aside defaults. Augusta, supra.

As set forth in Augusta, the first step is to determine whether or not the claimant was personally responsible for the default.

> This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate and the party must adequately defend its conduct in order to show excusable neglect.

Id. The key is to distinguish between the fault of the defendant and the fault of his attorney. In this case, it appears that the fault lies with defendant as, having signed the Notice of Removal *pro se*, he purports to have removed this action without the assistance of counsel. See Notice of Removal (#1).

## II. Determining Fault

Defendant's reason for being in default - - slow mail between California and North Carolina in the week after Christmas - - is simply contrary to the record before the court. On December 27, 2010, plaintiff, apparently from his home in California, signed the Notice of Removal and mailed the removal package that day to the Clerk of this court.[1] Two days later on December 29, 2010, the Clerk of this Court received such package and opened this action. See Docket Entry (#1). Defendant's contention that he was "a victim of the slow delivery of the U.S. mail between Christmas and the week after New Years" Motion, p. 11, is, therefore, without merit.

## III. The Actual Cause of Delay

Having removed the action before answering plaintiff's Complaint, Rule 81, Federal Rules of Civil Procedure, provided the procedure and deadlines for filing a responsive pleading, as follows:

> **(2) Further Pleading.**
> After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
> (A) 21 days after receiving — through service or otherwise — a copy of the initial pleading stating the claim for relief;
> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
> **(C) 7 days after the notice of removal is filed.**

Fed.R.Civ.P. 81(c)(2) (emphasis added). Defendant's Answer or other responsive pleading was due to be filed within seven days of filing the Notice of Removal on December 29, 2010. Defendant's responsive pleading was due January 6, 2011, and the Clerk of this Court properly entered default on January 7, 2011. It is readily apparent that defendant or an

---

[1] The Clerk of court did not save a copy of the envelope; however, the court notes that in the Certificate Of Service, defendant utilized overnight mail to serve plaintiff.

-3-

attorney assisting him failed to consider Rule 81 and thus the deadline was missed.

### III. Promptness in Moving to Set Aside Default

After default was entered January 7, 2011, defendant filed the instant Motion to Set Aside Entry of Default more than 30 days later. The court assumes that defendant had actual notice within a few days of the Clerk mailing him a copy of the default. Moving more than 30 days after default was entered was not prompt action. A month lapse does not qualify as "reasonable promptness," id., at 204; Consolidated Masonry v. Wagman Construction Corp., 383 F.2d 249, 252 (4th Cir. 1967), especially where, as here, the defaulting party is the party who caused the action to be removed to this court.

### IV. Consideration of Other Factors

Despite the fault lying solely with defendant, his failure to read Rule 81, and his failure to promptly move for relief under Rule 55(c), the Court of Appeals for the Fourth Circuit has strongly suggested that the trial courts take a liberal approach in determining whether to set aside a default. While three of the six factors patently weigh against setting aside default, the court must consider three additional factors:

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204 -205 (4th Cir. 2006) (citations omitted). The court will deem the "history of dilatory action" as favorable to defendant as no *history* of dilatory action has been shown outside the present matters. This leaves for the court consideration of whether defendant has a meritorious defense and whether sanctions less drastic than dismissal are available.

–4–

### A. Meritorious Defense

The court has considered whether defendant has a meritorious defense. Defendant has made no affirmative showing that he has a substantive "meritorious defense" to the claims made by plaintiff in his Complaint; instead, defendant has filed a Motion to Dismiss claiming a lack of personal jurisdiction (despite having removed this action), failure to state a claim, and failure to name a necessary party as reasons to dismiss the Complaint.

To determine whether defendant can assert any meritorious defense, the court has first considered the nature of plaintiff's claims. Plaintiff alleges that he invested $260,000.00 dollars with defendant, the purpose of which he was lead to believe was commercialization of an invention for generating hydroelectricity. Plaintiff contends that he reasonably relied on misrepresentations by defendant, that defendant defrauded him, and that he acted maliciously and deceptively. The court will, in light of the allegations of the Complaint, consider whether defendant has proffered any meritorious defense, either procedural or substantrive.

#### 1. First Defense: Motion to Dismiss or Transfer Venue Based on a Lack of Minimum Contacts

In moving to dismiss based on a lack of personal jurisdiction, defendant seeks transfer to the United States Court for the Central District of California where he resides. Venue of an action, such as this, that is removed to a federal court from a state court based on diversity jurisdiction is governed by the venue provisions of 28, United States Code, Section 1441(a). Godfredson v. JBC Legal Group, P.C., 387 F.Supp.2d 543, 547 (E.D.N.C.2005); Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc., 368 F.Supp.2d 450, 455-56 (D.Md. 2005). Section 1441(a) provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original

−5−

jurisdiction, may be removed by the defendant or the defendants, *to the district court embracing the place where such action is pending.*" Id. (emphasis added). The district court in Three M Enterprises, Inc. explained:

> By requiring removal to the district court for the district in which the state action is pending, Section 1441(a) "properly fixes the federal venue in that district." *Hollis v. Florida State University,* 259 F.3d 1295, 1300 (11th Cir.2001). Indeed, courts have recognized that Section 1441(a) establishes federal venue in the district where the state action was pending "as a matter of law," even if venue would be "improper under state law when the action was originally filed." *See Hollis,* 259 F.3d at 1300 (citing *Serrano v. United States Fire Ins. Co.,* No. EP-00-CA-255-DB, 2000 WL 33348220, *1-2 (W.D.Tex. Nov. 7, 2000); *Bacik v. Peek,* 888 F.Supp. 1405, 1413 (N.D.Ohio 1993); and R. Givens, 1 Manual of Federal Practice § 2.28 (5th ed.1998)).

Id., at 454 (footnote omitted). The district court in Three M Enterprises, Inc. went on to note that while Section 1441(a) does not give "a removing defendant a choice of districts to which to remove, and that it would not be entirely accurate to characterize removal as the voluntary relinquishment of a legal right," it is "the fact that the removal statute establishes venue as a matter of law [that] precludes Defendants' instant Motion to Dismiss or transfer the action based on improper venue." Id., at fn. 4 (citation and corresponding quotation marks deleted; emphasis added). See also Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531 (6th Cir. 2002)(venue in a case removed from state court is governed solely by § 1441(a), requiring denial of motion to dismiss or transfer venue under Section 1406(a)).

By removing this action to the Western District of North Carolina, defendant cannot argue that such district is an improper venue. Title 28, United States Code, Section 1404(a) provides for a motion to transfer venue by a "defendant in a removed action, if it believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a)." Godfredson v. JBC Legal Group, P.C. , supra, at 556 (citation omitted). Section 1404(a) provides, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In <u>Jim Crockett Promotions, Inc. v. Action Media Group, Inc.</u>, 751 F. Supp. 93 (W.D.N.C. 1990), this court established a litany of considerations applicable to any motion to transfer made under 28, United States Code, Section 1404(a). In order to determine whether transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, <u>Collins v. Straight, Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984), plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden, 1A Moore's Federal Practice, paragraph 0.345[5] at 4360 (Matthew Bender 1990); and the burden is heavy. <u>Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.</u>, 719 F. Supp. 446, 451 (W.D.N.C. 1989). The court has reviewed each factor and determines that the balance strongly favors retention of this action in this district.

## 2. Lack of Personal Jurisdiction

Turning next to the Motion to Dismiss, defendant contends that this action should be dismissed or transferred based on a lack of minimum contacts with North Carolina. Review of the affidavits submitted by plaintiff make it clear that defendant has sufficient contacts with this forum to require him to defend this action in this district. At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 317-20 (1945). However, determining what is fair requires review of the quantity and quality of the defendant's contacts with the forum state. <u>Perkins v. Benquet Mining Co.</u>, 342 U.S. 4376 (1952). Constitutional concerns only arise where jurisdiction is allowed pursuant to a state's long-arm statute. As the Court of Appeals for the Fourth Circuit has stated:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.

English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citation omitted).

In considering defendant's Motion to Dismiss, analysis begins with the two-step approach furnished by the circuit court. The North Carolina Supreme Court has held that the state's jurisdictional statute applies to a defendant who meet the minimal contacts requirement of International Shoe Co. v. Washington, supra. See Dillon v. Numismatic Funding Corp., 291 N.C. 674 (1977); see also Western Steer-Mom & Pops v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984) . The two-pronged approach approved by the circuit in English & Smith "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977).

There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

(1) quantity of the contacts;
(2) nature and quality of the contacts;
(3) source and connection of the cause of action to the contacts;
(4) interest of the forum state; and
(5) convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; see also N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that the long-arm statute provides for jurisdiction over these defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985). Therefore, the materials and arguments submitted by plaintiff and defendant will be reviewed in light of the five considerations found in Western Steer-Mom & Pops v. FMT

–8–

Invs., Inc., supra, *seriatim*.

Plaintiff has submitted affidavits which tend to show that defendant sought out business opportunities in North Carolina, performed work for an individual in North Carolina, stayed in the state in connection with his business endeavors for a substantial period of time, made telephone calls to a North Carolina resident who received those calls in North Carolina, and he caused to be wired by plaintiff money from a North Carolina account to an account in California. Affidavit of Rashid A. Buttar, at ¶¶ 3-5; Affidavit of Robert W. Plarr, at ¶¶ 4-6. The North Carolina long-arm statute specifically requires "substantial activity" within the state. N.C. Gen. Stat. Section 1-75.4(d) (1989). The court finds the contacts to be substantial activity in North Carolina.

The court has also considered the "Nature and Quality of the Contacts." From what this court can gather from the pleadings, the causes of action directly arise from defendant's contacts in North Carolina. Contacts with a state should be viewed together, not in isolation. Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985). Viewed together, each of the contacts with the forum state appear to show that defendant visited the State of North Carolina in furtherance of the enterprise. Thus; the quality of these contacts appear to be high in that the contacts were made in furtherance of the business relationship or scheme which is at the core of this dispute.

The court has also considered the "Source and Connection of the Action to the Contacts." The nexus between the contacts and the source of action is direct and unbroken.

The court has also considered the "Interest of the Forum State." The intent of the North Carolina long-arm statute is to assert *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. Kaplan School Supply Corp. v. Henry Wurst, Inc., 56 N.C. App. 567, cert. denied, 306 N.C. 385 (1982).

There is a mandate that the North Carolina long-arm statute be given liberal construction, thereby favoring the finding of personal jurisdiction. F.D.I.C. v. Kerr, 637 F. Supp. 828 (W.D.N.C. 1986). As exhibited in the long-arm statute, North Carolina has a substantial interest in the execution of contracts within this state, promises of services to be rendered in this state, solicitation of business within the state, and goods or intellectual property being licensed or sold to corporate residents of the state. See N.C. Gen. Stat. §§ 1-75.4(5)(a), et seq. Here, all the activities were in furtherance of the business enterprise; plaintiff invested substantial sums in the enterprise; and plaintiff contends he was defrauded of his investment. North Carolina's interest in the subject matter of this litigation is high as it directly relates to persons engaged in a business endeavor or obtaining funding for a business endeavor in North Carolina.

Finally, the court has considered the convenience of the forum. Whether the travel required in this case will be by or on behalf of defendant from California to North Carolina, or by or on behalf of plaintiff to California, the court is aware of the considerable distance and cost involved. If defendant were to have counsel appear, this district's requirement of local counsel could eliminate much of the inconvenience of travel on behalf of defendant.

Defendant having purposely directed activities toward a resident of the State of North Carolina, the contacts were sufficient to have led defendant to "reasonably anticipate being haled into court," in North Carolina. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. Therefore, the undersigned determines that this court has jurisdiction over the defendant and that the exercise of such jurisdiction would not offend traditional notions of fair play or substantial justice. International Shoe Co. v. Washington, 326 U.S. at 316. The court will deny the motion to dismiss premised on lack of personal jurisdiction.

### 3. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (May 18, 2009). While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The essential elements of a claim of fraud by misrepresentation are: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Jolly v. Acad. Collection Serv., 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b), it is plaintiff's obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby. Review of plaintiff's Complaint reveals that Plaintiff has set out facts that would support his cause of action, he has alleged misrepresentations made by defendant and his reliance on those misrepresentations, and he has alleged damages in the amount of $260,000.00 which he transferred via wire to defendant. See Complaint, ¶¶ 11-33. Plaintiff has, therefore, stated a cause of action. This motion will be denied.

-11-

####    4.     Failure to Join an Indispensable Party

Defendant next contends under Rule 12(b)(7), Federal Rules of Civil Procedure, that this action should be dismissed because defendant's wife is an indispensable party. Rule 12(b)(7) provides for dismissal of an action where a litigant fails to join a party under Rule 19. Fed.R.Civ.P. 12(b)(7). In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept as true the allegations of the Complaint. <u>Davis Cos. v. EmeraldCasino, Inc.</u>, 268 F.3d 477, 479 n.2 (7th Cir.2001). In addition, the moving defendant has the burden of showing that a party must be joined for just adjudication. <u>Ploog v. HomeSide Lending, Inc.</u>, 209 F.Supp.2d 863, 873 (N.D.Ill.2002).

A two-step inquiry is required. <u>S. Co. Energy Mktg., L.P. v. Va. Elec. & Power Co.</u>, 190 F.R.D. 182, 185 (E.D.Va.1999). First, a court must determine whether a party is necessary to the action. <u>Id.</u> In making this determination, three factors are considered: (1) whether complete relief can be accorded among the parties without joinder; (2) whether the absent person's ability to protect his own interest will be impaired; and (3) whether any existing parties might be subject to risk of multiple or inconsistent obligations. Second, where a court decides a party is necessary but cannot be joined, a court must then determine whether the party is indispensable to the action. Determinations as to necessity and indispensability under Rule 19 are not mechanical and "the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." <u>Id.</u>, at 185

Review of the Complaint and defendant's motion reveals no basis for finding that defendant's wife is an indispensable party. There are no allegations or contentions of any dealings with defendant's wife, no alleged misrepresentation made by her, or any contention that she did anything to convince plaintiff to invest in the business opportunity presented by

defendant. There simply is no showing at the present time that absent the presence of defendant's wife complete relief cannot be afforded or that such person's ability to protect her own interests will be impaired. This motion is, therefore, without merit.

### 5. Substantive Defenses

At page nine of his motion, plaintiff states that he "den[ies] each and every allegation of the Plaintiff's complaint" and that he has "identified over 61 potential witnesses to refute ever[y] allegation." Motion, p. 9. Reading such statement in a light most favorable to defendant, it is plausible that he has a defense to plaintiff's claims of fraud through misrepresentation. Unlike breach of an installment loan agreement, the elements of a claim for fraud are susceptible to many defenses. Whether or not these unspecified defenses are meritorious is yet to be seen; however, the court agrees with the fundamental principle that where the claim is fraud and treble damages are sought, the better course is to hear the defenses. This especially true where, as here, what has been alleged in the Complaint amounts extreme conduct that could encompass not only fraud, but elder abuse. See Complaint, ¶¶ 4-10. With some hesitation, the court agrees with defendant that such factual contentions merit more that decision by default, especially where there is a willing, although dilatory, defendant.

### 6. Conclusion as to Defenses

While defendant's procedural defenses are all without merit and will be denied, it is apparent that defendant denies the substantive allegations of the Complaint and is prepared to defend against such contentions. The court will find in defendant's favor on this factor.

### B. Sanctions Less Drastic than Default

Review of plaintiff's response does not reveal that any sanctions have been sought or proposed in the alternative in the event the court were to allow the default to be set aside.

-13-

The court would certainly consider costs and fees incurred in bringing the default and in responding to the motion to set it aside, but only at the conclusion of trial and after the parties have had an opportunity to resolve such issue amicably. This factor is, therefore, neutral.

## V. Conclusion

For the reasons discussed above, the court finds after a consideration of all the factors that the default should be set aside. The court will, however, deny each motion to dismiss as well as deny the motion to transfer as this district is an appropriate venue for resolution of this dispute.

* * *

Finally, defendant is advised to seek the assistance of counsel licensed to practice in this court as plaintiff seeks damages which could amount to nearly $1,000,000.00. Federal court is simply no place to litigate without the help of experienced counsel. Defendant is advised that if he proceeds *pro se*, the rules applicable to others will also be applicable to him. If he lacks confidence in the mails, he should utilize an overnight service that provides tracking and make sure that documents are filed within the time allowed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) defendant's Motion to Set Aside Entry of Default (#5) is **GRANTED**, the default entered by the Clerk of this court is **SET ASIDE**, and defendant shall Answer the Complaint within 14 days of the date this Order is filed; and

(2) defendant's Motion to Dismiss or in the Alternative to Transfer Venue (#6) is **DENIED WITH PREJUDICE** in its entirety for the reasons above discussed.

Signed: June 9, 2011

Max O. Cogburn Jr.
United States District Judge

-15-